# IN THE COURT OF APPEALS OF IOWA

No. 18-1944
Filed March 20, 2019

IN THE INTEREST OF S.B.,
Minor Child,

J.B., Father,
          Appellant.
_____


Appeal from the Iowa District Court for Polk County, Lynn Poschner, District

Associate Judge.


A father appeals the termination of his parental rights in his child.

**AFFIRMED.**


David A. Morse of Law Offices of David A. Morse, Des Moines, for appellant

father.

Thomas J. Miller, Attorney General, and Charles K. Phillips, Assistant

Attorney General, for appellee State.

Mike Bandstra, Des Moines, guardian ad litem for minor child.


Considered by Vogel, C.J., Vaitheswaran, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**MAHAN, Senior Judge.**

A father appeals the termination of his parental rights to his child, S.B. He contends the Iowa Department of Human Services (IDHS) failed to provide services to enable reunification. Upon our review, we affirm.

## I.    *Background Facts and Proceedings*

This family came to the attention of IDHS after S.B. sought medical treatment for injuries inflicted by the father. The father found then fourteen-year-old S.B. in the family home with a boy. He became upset and struck S.B. several times with the buckle end of a belt, breaking the buckle. He also choked her. S.B. fled to the home's second floor and eventually jumped from a second-story window to escape. She has not returned to the father's care since this incident.

The beating left marks on S.B.'s body for several days; some marks remained visible more than twenty days later. S.B. also initially required a neck brace due to neck injuries from the choking. IDHS placed S.B. with the father's former girlfriend, Y.B., and the juvenile court adjudicated S.B. a child in need of assistance due to the father's physical abuse. Following removal, the father engaged in services. He participated in an anger-management program, a parenting class, and sought therapy with three different providers. However, no visitation occurred due to a no-contact order between the father and S.B.

The State petitioned to terminate the father's parental rights to S.B. Following a hearing, the court granted the petition pursuant to Iowa Code section 232.116(1)(d), (e), (f), and (i) (2018). The father appeals.[1]

---

[1] The mother's rights were also terminated, but she does not appeal from the termination of her parental rights.

## II.    Scope and Standard of Review

Our review is de novo.  *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).
We are not bound by the juvenile court's factual findings, but we give them weight,
especially when witness credibility is critical to the outcome*.  See id.*  Proof must
be clear and convincing, meaning there are no "serious or substantial doubts as to
the correctness [of] conclusions of law drawn from the evidence."  *In re D.W.*, 791
N.W.2d 703, 706 (Iowa 2010).  "[R]eview of termination of parental rights under
Iowa Code chapter 232 is a three-step analysis."  *M.W.*, 876 N.W.2d at 219.  First,
we determine if "any ground for termination under section 232.116(1) has been
established."  *Id.*  If a statutory ground authorizing termination has been
established, then we consider whether termination in is the child's best interest.
*See id.* at 219–20.  "Finally, if we do find that the statutory best-interest framework
supports the termination of parental rights, we consider whether any exceptions in
section 232.116(3) apply to preclude termination of parental rights."  *Id.* at 220.

## III.    Discussion

The father challenges the four statutory grounds authorizing termination.
When "the juvenile court terminates parental rights on more than one statutory
ground, we may affirm the juvenile court's order on any ground we find supported
by the record."  *In re A.B.,* 815 N.W.2d 764, 774 (Iowa 2012).

We choose to address the sufficiency of the evidence under section
232.116(1)(d).  This paragraph authorizes the termination of parental rights upon
clear and convincing evidence of the following:

> (1) The court has previously adjudicated the child to be a child
> in need of assistance after finding the child to have been physically
> or sexually abused or neglected as the result of the acts or omissions

of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.

　　　(2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

Iowa Code § 232.116(1)(d). The juvenile court previously adjudicated S.B. a child in need of assistance after finding the father physically abused her, satisfying the first element. *See id.* § 232.116(1)(d)(1). We note although "parents have a right to inflict reasonable corporal punishment," punishment may turn into abuse if it is unduly severe or cruel. *See In re B.B.*, 598 N.W.2d 312, 315 (Iowa Ct. App. 1999). Here, the father used the buckle end of a belt to strike S.B. with enough force to leave marks visible more than twenty days later and break the buckle. He also choked her. We do not quarrel with the adjudicatory court's finding that the father's discipline of S.B. amounted to physical abuse.[2] *See id.* ("In determining whether the punishment crosses the line from corrective to abusive, the court looks at the amount of force used while taking into account the child's age, physical condition, and other characteristics as well as with the gravity of the child's misconduct.").

As to the second element, the father received services in the form of a parenting class, anger-management services, a mental-health evaluation, and therapy. In spite of receiving these services, the father continued to deny responsibility for his daughter's injuries and fails to appreciate the gravity of his conduct. Without accepting responsibility for his actions and appreciating the

---

[2] Within chapter 232, "physical abuse or neglect" means "any nonaccidental physical injury suffered by a child as the result of the acts or omissions of the child's parent, guardian, or custodian or other person legally responsible for the child." Iowa Code § 232.2(42).

gravity of his conduct, the father's proclamation that he will no longer physically harm his child as a form of punishment rings hollow. *See In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999) ("The requirement that a parent acknowledge and recognize abuse is essential for any meaningful change to occur."). Because the father continues to deny that his conduct amounted to abuse and resulted in S.B.'s injuries, the services provided are "not likely to be effective." *See id.* As a result, the second element is satisfied, and we find sufficient evidence supporting the statutory ground authorizing termination.

Next, the father contends IDHS did not make reasonable efforts toward reunification because it did not provide the necessary services for reunification. *See* Iowa Code § 232.102(9) (providing IDHS must make "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). "The reasonable efforts requirement is not viewed as a strict substantive requirement of termination." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). However, "[t]he State must show reasonable efforts as part of its ultimate proof the child cannot be safely returned to the care of the parent." *Id.* The scope of reasonable efforts is determined by the circumstances of the case. *See id.* (discussing scope of the reasonable-efforts mandate).

In the instant case, the father argues IDHS failed to make reasonable efforts when it did not provide for any visitation or therapy between the father and S.B. He contends he should not have been required to admit to or accept responsibility for the abuse found in the adjudication order before participating in visitation or therapy with S.B. However, although the father requested additional services for

S.B.,[3] he never brought his request for joint therapy or visitation before the court prior to the termination hearing. As a result, he failed to preserve error. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) (requiring a parent to request additional services prior to termination hearing in order to claim State failed to make reasonable efforts on appeal).

Regardless, we conclude IDHS made reasonable efforts toward reunification. The father never attempted to dismiss the no-contact order. So long as it remained, it would be inappropriate for IDHS to order visitation or therapy between the father and S.B., the protected party. Ultimately, the reunification process stalled because the father refused to take the next necessary step toward reunification—accepting responsibility for injuring S.B. We do not find such a prerequisite to visitation or therapy unreasonable. *See In re K.M.R.*, 455 N.W.2d 690, 691–92 (Iowa 1990) (noting parents' acknowledgment of harm improves their ability to benefit from future services). Because the father failed to take this critical step, IDHS could not provide the requested services to facilitate reunification.

Upon finding the State proved a statutory ground authorizing termination and provided reasonable efforts toward reunification, we turn to consideration of the child's best interest. We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Given the events giving rise to these proceedings, we

---

[3] The father requested a change in S.B.'s therapist because the therapist had some connection to S.B.'s caretaker, Y.B.; S.B. see a physiatrist; S.B. be placed at Woodward Academy; S.B. be drug tested; and S.B. receive substance-abuse treatment.

conclude the father is ill-equipped to provide appropriate discipline. *See C.B.*, 611 N.W.2d at 495 (noting parent's past performance indicates likely future performance). S.B. has several behavioral issues that are likely to require measured and thoughtful discipline, and the father is unable to provide that to her. As a result, we find termination to be in S.B.'s best interest. We also find no statutory exception under section 232.116(3) is applicable. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (noting the court may decline to terminate a parent's rights in certain circumstances and the court uses its discretion when deciding if a circumstance should preclude termination).

For the foregoing reasons, we affirm the termination of the father's parental rights.

**AFFIRMED.**